**Benny Dale ALEXANDER,**
**Petitioner-Appellant,**

v.

**O.L. McCOTTER, Director, of Texas**
**Department of Corrections,**
**Respondent-Appellee.**

No. 84–2539
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 30, 1985.

Benny Dale Alexander, pro se.

Jim Mattox, Atty. Gen., James O. Kopp, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge.

Benny Dale Alexander, a state prisoner, appeals pro se from the district court's denial of his application for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his July 1981 Texas conviction for burglary for which he received, after enhancement for a prior felony, a forty year sentence. The appellant claims on appeal that he is entitled to relief on four separate grounds, each of which the district court rejected without an evidentiary hearing: 1) that the evidence at trial was insufficient to support the jury's verdict; 2) that the indictment was fundamentally defective; 3) that the district court erred by not instructing the jury on a lesser included offense; and 4) that the appellant was denied the effective assistance of counsel at trial. We affirm.

## FACTS AND PROCEEDINGS BELOW

On March 9, 1981, at about 4:30 a.m., Reiffert Ward, who was asleep with his wife Katherine in the bedroom of their home, was awakened by a blow to the back of his head. The appellant had struck Ward on the head with an eighteen inch lug wrench or tire tool, thereby inflicting a head wound that required five stitches. The appellant continued to beat Mr. Ward with the tire tool, and Mr. Ward attempted to repel the appellant's attack by rolling over and kicking. As a result of these latter blows, Mr. Ward's legs were severely bruised, one toe and an ankle were fractured, and his left hand was cut, requiring three stitches.

When Mrs. Ward switched on the bedroom lamp, the appellant ceased his attack and moved away from the bed. She attempted to telephone the police, but hung up when the appellant threatened to kill both her and her husband if she did not stop her call. Appellant also threatened harm to the Wards' children, who were asleep in the house. The appellant refused the Wards' offer of their car, property, and money, although he later took $17 in cash.

During the lull after Mrs. Ward turned on the light, the appellant told Mr. Ward several times to lie down on the bed and put his head near where the appellant was standing with the lug wrench. Mr. Ward testified that when he told appellant that he would not lie down on the bed to be killed, the appellant responded, "[W]hat is the difference with doing it [killing him] with this tire tool or a bullet in the head?" The Wards soon determined that the appellant did not have a gun and a fight ensued. The appellant relinquished control of the lug wrench after Mr. Ward punched him and Mrs. Ward hit him with a suitcase. Upon gaining control of the lug wrench, Mr. Ward hit the appellant on the head two or three times, following which the appellant turned and attempted to enter the bedroom of the Wards' youngest child. After receiving further blows from the lug wrench and one further hit from the suitcase, the appellant retreated and threw down the $17 on the floor. Before leaving, the appellant stated, "[G]ive me a break," and "[T]hey give [sic] me the wrong address."

Both Mr. and Mrs. Ward testified that they saw their assailant clearly and both identified appellant at trial as such. The eighteen inch lug wrench was introduced into evidence, and testimony was elicited that it could be used to kill. Testimony was also presented that a substantial amount of blood was splattered in the Wards' bedroom.

Appellant was convicted in state court under Section 30.02(a)(3) of the Texas Penal Code (Vernon's 1974) of burglary consisting of an unlawful entry followed by the commission or attempted commission of a felony.

Appellant sought review from the Texas appellate courts but was denied relief; the Texas Court of Appeals upheld the appellant's conviction and the Texas Court of Criminal Appeals refused to hear a discretionary review and subsequently denied two writs for habeas corpus. Appellant, having exhausted his state remedies, then sought relief through the present federal habeas proceedings. We affirm the district court's denial of relief.

## DISCUSSION

### I. Insufficiency of Evidence

■ The appellant claims there was insufficient evidence to support his conviction by arguing that the state failed to prove beyond a reasonable doubt that he committed the offense of burglary of a habitation followed by the commission or attempted commission of a felony—here, attempted murder. His claim has no merit.

The standard for assessing the sufficiency of the evidence to support a conviction is settled:

"[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781,

2789, 61 L.Ed.2d 560 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 1624–25, 32 L.Ed.2d 152 (1972)) (emphasis in original).

This Court has held that, in making this determination, we should not substitute our view of the evidence for that of the factfinder, but consider all of the evidence in the light most favorable to the prosecution. *Whitmore v. Maggio*, 742 F.2d 230, 232 (5th Cir.1984). *See also Jackson, supra*, 99 S.Ct. at 2789. To make the above assessment, we must refer to the substantive elements of the criminal offenses as defined by state law. *See Turner v. McKaskle*, 721 F.2d 999, 1001 (5th Cir.1983).

■ The appellant was convicted of burglary by entry of a habitation followed by the commission or attempted commission therein of a felony, to wit, attempted murder. *See* Tex.Penal Code § 30.02(a)(3) (Vernon 1974). Under Texas law a person commits murder if he "intentionally or knowingly causes the death of an individual." *Id.*, § 19.02(a)(1). Criminal attempt is committed if a person, acting with the specific intent to commit a particular offense, performs an act "amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.*, § 15.01(a) (Supp.1985).

The record in this case clearly indicates that a rational factfinder could conclude that appellant was guilty of the crime with which he was charged. For instance, the appellant struck Mr. Ward on the back of the head with an eighteen inch iron lug wrench while Mr. Ward was sleeping, and the resultant wound necessitated five stitches. There was testimony that the lug wrench could be used to kill a person. When Mr. Ward awakened, the appellant continued to beat him with the lug wrench. Only through self-defense did Mr. Ward stave off the attacks of the appellant. There was, moreover, testimony to indicate that the appellant, through his blows, caused Mr. Ward to bleed extensively. After the appellant and Mr. Ward were separated, the appellant unsuccessfully attempted to persuade Mr. Ward to put his head down on the bed near where the appellant was standing, apparently so that appellant could again strike him on the head with the lug wrench. In this connection, appellant made a statement indicating that he regarded a blow or blows on the head with the lug wrench as essentially equivalent to "a bullet in the head." We find that with such evidence a rational factfinder could properly conclude that appellant was guilty as charged. *See Jackson, supra*, 99 S.Ct. at 2789.

## II. Indictment Deficiencies

The appellant's second contention is that the indictment is fundamentally defective because it fails to list all the essential elements of an offense under Texas law. He did not raise this complaint in the trial court in which he was convicted or on his appeal as of right to the Texas Court of Appeals. Appellant specifically notes that the indictment fails to state that he acted with the specific intent to commit murder.

■ In this Circuit, " 'the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction.' " *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir.1984) (quoting *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir.1980)). The *Liner* court further stated that a claim of insufficiency of a state indictment is valid for federal habeas purposes only when the indictment is so defective that under no circumstances could a valid state conviction result from facts provable thereunder, *id.* at 1203, and that this can be determined "only by looking to the law of the state where the indictment was issued," *id.*, quoting *Johnson v. Estelle*, 704 F.2d 232, 236 (5th Cir.1983). We adhered to the rule that a federal habeas court will not consider such claims "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case...." *Id.*, quoting *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir.1969). *See*

*Bueno v. Beto*, 458 F.2d 457, 459 (5th Cir.), *cert. denied*, 409 U.S. 884, 93 S.Ct. 176, 34 L.Ed.2d 140 (1972); *Lowery v. Estelle*, 696 F.2d 333, 337 (5th Cir.1983).

The Texas Court of Criminal Appeals has not only refused to hear this case upon a discretionary review on direct appeal, but has also denied a writ for habeas corpus sought on the basis, *inter alia*, of the claimed insufficiency of the indictment. By refusing to grant the appellant relief, however, the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose.[1]

■ Even if review of this claim is not precluded, the indictment was sufficient under Texas law because it alleges the elements of the crime. Tex.Penal Code art. 30.02(a)(3). The indictment states in pertinent part that "Benny Dale Alexander ... on or about the 9th day of March ... 1981 ... did then and there knowingly and intentionally enter a habitation without the effective consent of ... Ward, the owner, and therein attempt to cause death of said ... Ward by striking and beating him ... with a tire tool...." This conviction clearly resulted from facts provable under the indictment. *See Liner*, 731 F.2d at 1203. In addition, Texas courts hold that it is unnecessary to allege the elements of a felony if the indictment for burglary states that the entry was with the intent to commit a specific crime. *See Davila v. State*, 547 S.W.2d 606, 608–09 (Tex.Crim.App.1977); *Cotton v. State*, 645 S.W.2d 907 (Tex. App.2d Dist.1983). Thus the appellant's claim that the specific intent to commit murder must be alleged in the indictment is rejected.

■ We have stated that an indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against him and (2) enables him to plead an acquittal or conviction and bar a future prosecution for

the same offense. *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). The indictment here is obviously sufficient to protect appellant against further prosecution for the same offense and clearly provides notice to the appellant of the crime for which he is charged. It also states the elements of the offense. The only other complaint is that the indictment says that appellant did "attempt to *cause the death of* ... Ward, by striking and beating him ... with a tire tool" (emphasis added), instead of saying that appellant did "attempt to *murder* ... Ward, by striking and beating him ... with a tire tool" (emphasis added). We think the suggested distinction is entirely too ephemeral for us to conclude, in the face of the rejection by the Texas courts of appellant's habeas complaints on this ground, that the alleged defect deprived the convicting court of jurisdiction as is necessary under *Liner*. *See Ex parte Roberts*, 502 S.W.2d 802, 803 (Tex.Crim.App.1974) (malicious injury to property indictment which is defective for failure to allege the extent of injury to the property, is nevertheless not void so as to deprive convicting court of jurisdiction); *Norman v. McCotter*, 765 F.2d 504, 509 n. 5 (5th Cir.1985).

## III. Lesser Included Offense Instruction

■ The appellant claims that the state trial court erred by failing to instruct the jury on a lesser included offense. Here, the appellant was charged with unlawful entry, followed by the commission or attempted commission of a felony, *i.e.*, attempted murder, by striking the victim with a tire iron. The appellant requested that the judge instruct the jury on simple assault, but did not request an instruction on aggravated assault. Article 22.02(a) of the Texas Penal Code defines aggravated assault to include, *inter alia*, an assault in which the actor either "causes serious bodily injury to another" or "uses a deadly

---

1. The present case is not on all fours with *Murphy, Bueno,* or *Liner.* In those cases, the highest court in the state expressly ruled on the alleged

deficiencies of the indictments. In this case, the Texas Court of Criminal Appeals simply declined to grant relief.

weapon." Article 22.02(b) states that aggravated assault is a felony of the third degree. Under Texas law, aggravated assault can be a lesser included offense of attempted murder. *See Williams v. State,* 622 S.W.2d 578 (Tex.Crim.App.1981); *Lee v. State,* 671 S.W.2d 630 (Tex.App., 1st Dist.1984); *Doss v. State,* 636 S.W.2d 564 (Tex.App., 10th Dist.1982). However, Alexander failed to request an instruction on aggravated assault and thus waived the issue under Texas law. *See Simon v. State,* 488 S.W.2d 439 (Tex.Crim.App.1972); *Turner v. State,* 688 S.W.2d 698 (Tex.App. 1st Dist.1985); *Garcia v. State,* 685 S.W.2d 420 (Tex.App. 4th Dist.1985). We do not understand appellant to have contended below, or to contend on this appeal, that he is entitled to federal habeas relief because there was no instruction on aggravated assault as a lesser included offense. Appellant's federal habeas argument has consistently been, in respect to the lesser included offense question, merely that he was entitled to the *requested* instruction on assault as a lesser included offense. Even if appellant were to have contended below and on this appeal that he was entitled to federal habeas corpus relief because there was no instruction an aggravated assault, appellant's failure to request such an instruction and the above cited clear Texas rule that such failure to request is a fatal waiver, would bar relief under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), there being no "cause" for the failure to request. *Stokes v. Procunier,* 744 F.2d 475, 480 (5th Cir.1984); *Rollins v. Maggio,* 711 F.2d 592 (5th Cir.1983).

Simple assault is defined in the Texas Penal Code § 22.01(a)(1) as intentionally, knowingly, or recklessly causing bodily injury to another. Texas law recognizes simple assault as a potential lesser included offense of both attempted murder and aggravated assault. *See DeRusse v. State,* 579 S.W.2d 224, 234 (Tex.Crim.App.1979); *Chew v. State,* 639 S.W.2d 27, 30 (Tex.App. 5th Dist.1982).

The test in Texas for whether a lesser included offense instruction is required is clear:

"In determining whether a charge on a lesser included offense is required, a two-step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser included offense." *Johnson v. State,* 623 S.W.2d 654, 657 (Tex.Crim.App.1981).

In applying the above test, the Texas courts have considered cases similar to this one. For instance, in *Akbar v. State,* 660 S.W.2d 834 (Tex.App. 11th Dist.1983), the defendant was indicted for attempted murder and appealed from his conviction of the lesser included offense of aggravated assault. On appeal, the appellant contended that the trial court erred in failing to include an instruction on simple assault. *Id.* Guided by the *Johnson* standards, the court in *Akbar* found that the evidence was insufficient to warrant submission of a simple assault charge. *Id.* at 837. In *Akbar,* the victim was repeatedly strangled, once to the point of near blackout, and the jury could draw the inference that her injuries created a substantial risk of death. *Id.* at 836. The court stated that if guilty at all, Akbar was only guilty of either attempted murder or aggravated assault and that there was, therefore, no error in refusing to submit the instruction on simple assault. *Id.* at 837.

■ The facts in the present case are sufficiently analogous to *Akbar* that we find the evidence does not support a simple assault charge. The record shows that the appellant entered the home of Reiffert Ward and struck him over the head with a tire tool, thereby inflicting a wound that required several sutures. After Mr. Ward awoke, the appellant continued to beat him about the legs and arms, causing severe bruises and a fractured toe and ankle. The appellant also threatened to kill the Wards unless Mrs. Ward hung up the phone when

she attempted to call the police. The appellant repeatedly asked Mr. Ward to put his head on the bed within striking range of the lug wrench and stated, "[W]hat is the difference in doing it [killing him] with this tire tool or a bullet in the head." Both here and in *Akbar* there was a serious bodily attack which could have easily led to the death of the victim, and in both cases death was indeed the intended result. Given these facts, simple assault was not raised as a lesser included offense.[2]

There is uncertainty in this Circuit as to whether due process ever requires a lesser included offense instruction in non-capital cases. In *Bell v. Watkins*, 692 F.2d 999, 1004 (5th Cir.1982), *cert. denied*, 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983), we stated that "[t]he due process clause of the Fourteenth Amendment requires a trial judge to give a lesser included offense instruction to the jury 'if the evidence would permit a jury to find [the defendant] guilty of the lesser offense and acquit him of the greater.'" (Quoting *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980), which quotes *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 1995–96, 36 L.Ed.2d 844 (1973)). At face value, *Bell* broadly imposes constitutional requirements on state courts. *Bell* is, however, a capital case, as are all the cases it cites with the exception of *Keeble*, which is a direct appeal of a federal prosecution decided on nonconstitutional grounds. Thus it is doubtful whether the test of *Bell* applies to non-capital state habeas cases.

■ In a line of cases dating back to 1970, this Circuit has consistently held that the failure of the state trial judge to instruct a jury on a lesser included offense is not a federal constitutional matter. *See Easter v. Estelle*, 609 F.2d 756, 758 (5th Cir.1980) (and cases cited therein); *Higgins v. Wainwright*, 424 F.2d 177, 178 (5th Cir.), *cert. denied*, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970). In *Bell*, this Court did not address the possible conflict between the rule it had stated and the *Easter* line of cases. The federal district court below, however, relied on neither *Bell* nor *Easter*, but instead interpreted *Spaziano v. Florida*, — U.S. —, 104 S.Ct. 3154, 3159, 82 L.Ed.2d 340 (1984), and *Beck, supra*, 100 S.Ct. at 2388, both capital murder cases, as creating a constitutional right to a lesser included offense instruction in non-capital cases.

We are inclined to the view that the *Easter* line of cases which hold that a lesser included offense instruction is not a federal constitutional matter in non-capital cases survives the *Bell* decision. Even if we are wrong in this analysis, the result in this case does not change. *Bell* is limited to its own test and this test is remarkably similar to the one used by the Texas courts in deciding whether a lesser included offense instruction is available to the defendant.[3] We find, using the facts as stated in our Texas law analysis, that in this case simple assault was not raised by the evidence.

## IV. Ineffective Assistance of Counsel

The appellant's last claim is that he was denied effective assistance of counsel in violation of his sixth amendment rights on

---

**2.** In another case involving an attack with a tire tool, the Texas Court of Criminal Appeals held that both aggravated assault and simple assault instructions were appropriately denied, even though both were lesser included offenses of the principal crime of aggravated rape. *Johnson v. State*, 623 S.W.2d 654 (Tex.Cr.App.1981). The victim in that case received head fractures and was knocked unconscious. *Id.* at 656. Although the facts in this case are not so brutal as those in *Johnson*, here the instruction on aggravated assault is not sought—only that on simple assault. Here the victim was attacked while asleep and hit on the back of the head and *Johnson* supports the proposition that such serious bodily attacks with tools of that kind do not raise simple assault.

**3.** The federal test is that an instruction is required when the evidence would allow a jury to find a defendant guilty of the lesser offense and acquit him of the greater. *Bell, supra*, at 1004. The second part of the Texas test under *Johnson* is in accord, allowing a lesser included offense instruction if there is "some evidence in the record that if the defendant is guilty, he is guilty only of the lesser included offense." *Johnson, supra*, at 656.

two distinct grounds. First, the appellant claims that his trial counsel failed to interview potential witnesses who would support his version of the facts surrounding the commission of the offense, and that the absence of these witnesses left him with no defense. Second, the appellant argued that his trial counsel failed, despite appellant's specific request prior to trial, to investigate the validity of the two prior convictions alleged for enhancement, and that appellant therefore did not take the witness stand in his own behalf.

■ The Supreme Court recently enunciated the test for ineffective assistance of counsel claims:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable...."

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

The *Strickland* court went on to state that a defendant must show both a deficiency and resulting prejudice before the result is rendered unreliable. *Id.* To prevail on an ineffective assistance of counsel claim, the claimant carries the burden of proof, *see Hayes v. Maggio,* 699 F.2d 198, 201–02 (5th Cir.1983), and must overcome a strong presumption that the conduct of claimant's trial counsel falls within the wide range of reasonable professional assistance. *See Strickland,* 104 S.Ct. at 2065–66. To demonstrate prejudice, the claimant must show "a reasonable probability" that "but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Id.* at 2068.

■ As to appellant's claim premised on his counsel's failure to call witnesses, this Court has rejected such claims unless the habeas petitioner demonstrates prejudice therefrom. *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984). We noted in *Cockrell* that complaints based upon uncalled witnesses were not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and that speculations as to what these witnesses would have testified is too uncertain. *Id. See also Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir. 1978). In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial. *See Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir.1981); *see also Gomez v. McKaskle,* 734 F.2d 1107, 1109–10 (5th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 524, 83 L.Ed.2d 412 (1984) (petitioner failed to meet his burden of showing that uncalled witnesses would have testified favorably to the petitioner's case).

■ Appellant's claim fails to meet these standards. His petition in this respect below merely alleged that his counsel "failed to interview potential witnesses, [his] version of the facts ... leaving [him] with no defense at trial ... no witnesses in his behalf. ..." However, at no place did appellant give any indication of who the uninterviewed witnesses might be, or the subject matter of their potential testimony, or what defense they might tend to establish. The state moved to dismiss on the ground, *inter alia,* that appellant's allegations of ineffective assistance were conclusory and lacked any showing of prejudice. Appellant's response provided absolutely no particulars. Thus appellant raised no cognizable claim in this respect. As we said in this connection in *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983), "mere

conclusory allegations do not raise a constitutional issue in a habeas proceeding."

In his brief on this appeal, appellant for the first time gives some specifics. He asserts that he stopped at the Wards' to buy fuel for his car, which was running out of gas; that he went to the Wards' only for that purpose; that the Wards invited him in, and then attacked him; that when he left, he drove several miles, his car then ran out of fuel, and he walked several more miles to a "Truck Stop" where he purchased two gallons of gas. One of the "witnesses" was a neighbor of the Wards at whose house he unsuccessfully tried to buy fuel just before going to the Wards; the other "witness" was the attendant at the "Truck Stop." These claims, being made for the first time on appeal, are simply too late. *Spivey v. Zant,* 661 F.2d 464, 477 (5th Cir.1981). *See also, e.g., Hall v. Maggio,* 697 F.2d 641, 642–43 (5th Cir.1983); *Smith v. United States Parole Com'n,* 752 F.2d 1056, 1057 n. 1 (5th Cir.1985). Even if we were to consider these claims, however, they are clearly unavailing. There was obviously no "reasonable probability" that the uncalled witnesses would have made any difference to the result. The issue was not what transpired before appellant arrived at, or after he left, the Wards' property, but what happened while he was there. Mr. and Mrs. Ward gave eyewitness testimony to this; the tire iron was put in evidence. No contrary evidence was presented.

 Appellant's claim that his counsel's failure to investigate his two previous convictions violates his right to effective counsel is likewise without merit. Appellant's claim is based on the fact that one of the two prior convictions alleged in the indictment for enhancement purposes was not used at trial. Appellant therefore asserts that it was void, and could not have been used for impeachment, and that had he known that he could be impeached by only one, instead of two, prior convictions, he would have taken the stand in his own

defense. However, the state record reflects that the prosecutor notified the court that the indictment on which appellant was being tried stated an incorrect case number for one of the two prior convictions it alleged for enhancement, and therefore that prior conviction was not used for enhancement purposes.[4] Hence appellant suffered no prejudice as to enhancement. The record also contains the pen packets for both prior convictions, each appearing to be wholly valid. Both could have been used for *impeachment,* whether or not correctly described in the indictment. Hence, appellant's decision not to take the stand was based on a correct perception—just as he thought, he could have been impeached by two prior convictions. Thus he suffered no prejudice from his counsel's alleged failure to investigate the prior convictions. *See Sand v. Estelle,* 559 F.2d 364, 365 (5th Cir.1977) (where counsel's advice on the validity of prior convictions is correct, habeas relief is not warranted even though counsel's investigation into the matter can be faulted).

For the above reasons, we affirm.

AFFIRMED.

---

**4.** No claim is made that the other conviction is invalid for any reason and thus this conviction

cannot thereby be the cause of the requisite prejudice.