**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 98-30658

---

KIM KOHLER,

Petitioner-Appellant,

VERSUS

BURL CAIN, Warden, Louisiana State Penitentiary

Respondent-Appellee.

---

Appeal from the United States District Court
For the Eastern District of Louisiana
(97-CV-1318-11)

---

May 5, 2000

Before POLITZ, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This is an appeal brought by Petitioner-Appellant Kim Kohler ("Kohler") from the denial of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Kohler contends, among other things, that he was denied effective assistance of counsel at trial. Because Kohler is entitled to an evidentiary hearing with respect to his claim of ineffective assistance of counsel, we REVERSE the decision of the district court and REMAND for further proceedings consistent with this opinion.

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

This case arises from a murder and an attempted murder that were the consequence of a dispute over some allegedly stolen jewelry. In June, 1980 Vincent Allnet ("Vincent") discovered that some jewelry was missing from his home. Vincent, convinced that a sixteen-year old acquaintance Randy Sebble ("Sebble") had stolen the jewelry, confronted Sebble with his nephew Owen Meilleur ("Meilleur"), who was sixteen as well. During this confrontation, Vincent became angry and began beating Sebble. When Meilleur attempted to stop the beating of Sebble, Vincent accused Meilleur of conspiring with Sebble to steal the jewelry, beating him into unconsciousness.

Later that evening, after regaining consciousness, Meilleur attended a cocktail lounge in Jefferson Parish to watch his cousin perform. Before he could enter the lounge, however, he noticed Vincent's car in the parking lot and attempted to flee. A friend of Vincent's named Floyd Webb ("Webb") chased Meilleur and forced him into Vincent's car. In the car were Vincent, his brother Richard Allnent ("Richard"), Kohler, Sebble and Webb. The car then left the parking lot of the lounge and proceeded towards St. Tammany Parish, during which time Sebble and Meilleur were threatened to return the jewelry "or else." The car stopped at a convenience store so that Vincent could purchase beer. At that time Meilleur attempted to escape from the car having noticed a police car in the parking lot, but was forcibly restrained by two of the men in the car so that his screams were muffled against the car seat. The car subsequently left the convenience store and continued into an isolated area of St. Tammany Parish.

Once the car pulled over, Sebble and Meilleur were forcibly removed from the car and brutally beaten again by Vincent and Richard. After the beatings, Webb retrieved a handgun from the car, which was used to shoot at the feet of Sebble and Meilleur

causing them to "dance." At this time Vincent and Richard retrieved shotguns that were hidden from view in the trunk of the car. Although offered one, Kohler refused to accept a weapon. Vincent then returned to Sebble and Meilleur. At that time Vincent ordered Richard to shoot Meilleur, to which Richard responded "are you serious?". In response, Vincent shot Meilleur in the side with the shotgun seriously injuring, but not killing, him. Immediately thereafter, Webb shot Sebble in the chest, killing him almost instantaneously. Vincent, Richard, Webb and Kohler then fled the scene. Once his assailants left, Meilleur attempted to crawl back to the road for help when he recognized that the car had returned. Fearing for his life, Meilleur pretended to be dead, placing his face into an ant-hill. A person exited from the car, kicked both Sebble and Meilleur, and erroneously confirmed to the others that both were dead. The car then drove away.

At trial, Kohler argued that he never intended to kill Sebble and Meilleur; he contended that he neither restrained Meilleur in the car nor was the person who confirmed that Sebble and Meilleur were dead. Rather, he contends that he only intended to help his friend Vincent regain his jewelry by frightening Sebble and Meilleur. Kohler alleges that Richard, who was also on trial for the same incident at the same time, would confirm this story and also confirm that Kohler was not the man who checked to see if Sebble and Meilleur were dead. During trial, Meilleur testified that Kohler was the man who had restrained and muzzled him in the car at the convenience store and was the man who had confirmed he was dead. Despite having his head in a car seat and in the ant-hill at these respective times, Meilleur based this identification on the fact that he recognized Kohler's voice and that he recognized the shoes Kohler was wearing at the time. Kohler's counsel did not call any witnesses in Kohler's defense, including failing to call Richard to counter Meilleur's testimony. Kohler

was convicted of being a principal in the first-degree murder of Sebble and was sentenced to life in prison without the possibility of parole.

After conviction, Kohler filed for post-conviction relief in state court, contending *inter alia* that he was denied effective assistance of counsel for failure to call Richard as a witness. The 22nd Judicial District Court denied the petition as "without merit" without holding an evidentiary hearing, and the Louisiana Supreme Court declined to exercise its supervisory jurisdiction. Kohler then filed a federal habeas petition, contending (1) he was denied compulsory process when prevented from calling Richard as a witness as Richard was at his own trial, and (2) he received ineffective assistance of counsel for failure to call Richard as a witness and for failure to seek a continuance so that Richard could be called as a witness. The district court denied Kohler's petition without holding an evidentiary hearing either. Kohler timely applied for a certificate of appealability ("COA") with this court, which was granted solely as to the second issue.

II.

For the first time on appeal Kohler attempts to argue that the state court denied his equal protection rights through the systematic exclusion of black forepersons from St. Tammany Parish juries and that Kohler received ineffective assistance of counsel because counsel failed to move to quash the indictment as unconstitutional. Issues not raised before the district court cannot be considered for the first time on appeal. *See Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir. 1999). Further, issues that are not covered by a COA are not properly before this court and thus cannot be considered on appeal. *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997). Therefore, we need not consider either of these claims raised by Kohler for the first time on

-4-

appeal.

III.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 689-94 (1984). "In reviewing an ineffective assistance claim, we must 'judge the conduct of the defense according to the objective standard of the reasonable attorney,' and 'give great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment.'. Accordingly, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994) (internal citations omitted).

Specifically, "complaints based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and that speculations as to what these witnesses would have testified is too uncertain. In order for the appellant to demonstrate the requisite Strickland prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

The district court relied on this strong presumption that failure to call a witness is proper trial strategy, and thus not ineffective assistance of counsel, in denying habeas relief. Although there is such a strong presumption, and courts must be

-5-

extremely hesitant in second-guessing trial strategy, it appears that Kohler may have arguably met this high standard. Kohler contends that Richard Allnet can testify that Kohler had no knowledge of the intent to murder Sebble and that Kohler in no way participated in the murder -- either by restraining Meilleur in the car while stopped at the convenience store or by confirming that Sebble and Meilleur were dead. Such testimony would directly contradict that of Meilleur, the only direct evidence linking Kohler to the murder. Further, in his affidavit Richard attested that he would waive his right against self-incrimination under the Fifth Amendment. Thus, as a preliminary matter, it appears that Kohler has demonstrated "not only that this testimony would have been favorable, but also that the witness would have testified at trial." *Id*.

The district court further held that, even if Richard were to testify as he stated he would in his affidavit, failure to call him could still be within counsel's trial strategy because Allnet's testimony could be impeached by possibly contradictory testimony at his own trial. In addition, the district court held that the failure to call Richard could have been due to counsel's fear that having a person convicted of murder for the same incident testify would more closely connect Kohler to the murder, rather than exonerate him. While these assumptions may well be correct, Kohler contends that when he asked counsel the reason for his failure to call Richard, his attorney merely stated that "he forgot." There is no evidence in the record supporting either assertion.

"When there is a factual dispute [that] if resolved in the petitioner's favor would entitle [him] to relief and the state has not afforded him a full and fair evidentiary hearing, a federal habeas petitioner is entitled to discovery and an evidentiary hearing." *Goodwin v. Johnson*, 132 F.3d 162, 178 (5th Cir. 1998). In the present case, there is a factual dispute as to why Kohler's

counsel failed to call Richard as a witness. It is undisputed that the 22nd Judicial District Court did not conduct an evidentiary hearing with respect to Kohler's claim of ineffective assistance of counsel. While there is a strong presumption that Kohler's counsel's failure to call Richard as a witness was for strategic reasons, Kohler has alleged facts that, if resolved in his favor, would entitle him to relief, i.e., that his counsel failed to call a witness that would directly contradict the sole direct evidence linking Kohler to the murder of Sebble because he forgot to do so. Since these alleged facts seem to establish precisely the type of ineffective assistance of counsel claim contemplated in *Alexander*, an evidentiary hearing is necessary to determine the true reason for counsel's failure to call Richard as a witness. Accordingly, the district court erred in failing to hold such an evidentiary hearing.

IV.

Because the district court erred in not holding an evidentiary hearing as to why Kohler's counsel failed to call Richard Allnet as a witness, the decision of the district court is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.